UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

Case No. 1:15-cv-24230-COOKE/TORRES

NICOLE WEBB, *as Personal
Representative for the Estate of
Phillip Webb, deceased*,

       Plaintiff,

vs.

CARNIVAL CORPORATION,

       Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    Plaintiff Nicole Webb ("Plaintiff"), as Personal Representative for the Estate of Phillip Webb ("Decedent"), and on behalf of all survivors who are entitled to recover,[1] brings this negligence action against Carnival Corporation ("Defendant" or "Carnival") for its alleged role in overserving alcohol to Decedent and proximately causing his death onboard a Carnival cruise. Before me now is Carnival's Motion for Summary Judgment ("Motion") (ECF No. 41). For the reasons below, Carnival's Motion is denied.

### I.    BACKGROUND

    Plaintiff and Decedent ("the Webbs") were passengers onboard the Carnival *Dream* on January 17, 2015, departing from New Orleans, Louisiana to Cozumel, Mexico. Def.'s Statement of Material Facts ¶ 1, ECF No. 41 ("Def.'s Facts").[2] Their cabin included a balcony with a railing that was over 45 inches high, complying with relevant federal law. *Id.* ¶¶ 7 – 9. The Webbs traveled with another couple, Robert and Amanda Howe ("the

---

[1] Plaintiff's individual claims have been voluntarily dismissed (ECF No. 87).

[2] The parties' statements of material facts set forth in their Motion filings are deemed admitted to the extent they are supported by evidence in the record and not specifically disputed in an opposing statement of facts. S.D. Fla. L.R. 56.1(b); *see also Gossard v. JP Morgan Chase & Co.,* 612 F. Supp. 2d 1242, 1245 – 46 (S.D. Fla. 2009).

Howes"), that stayed in an adjoining cabin. *Id.* ¶ 11.

On the day in question, the Webbs were served 22 alcoholic beverages in a 12-hour span, from before noon to near midnight. *Id.* ¶¶ 12 – 13, 24; Pl.'s Resp. to Def.'s Facts ¶¶ 17, 66, ECF No. 79 ("Pl.'s Facts"). Most of these drinks were Long Island Iced Teas, each of which contains 2.5 ounces of alcohol. Pl.'s Facts ¶ 69. Plaintiff ordered and signed for drinks throughout the day for both herself and Decedent, save for when the Webbs both ordered drinks at the casino bar. *See* Def.'s Facts ¶¶ 14 – 17, 22, 24 – 26. The two attended dinner at 9:30 p.m., where Decedent, who was inebriated, did not slur his words or stumble. Def.'s Facts ¶ 20; Pl.'s Facts ¶ 20. But less than an hour later at the casino bar, Decedent fell off his barstool after a round of drinks. Def.'s Facts ¶ 23; Pl.'s Facts ¶ 75. Parties dispute the reason for Decedent's fall, and whether the bartender acted appropriately after the fall or was warned to cease serving Decedent drinks. At 11:43 p.m., roughly an hour after the fall, Plaintiff signed off on what would be a final round of drinks for herself and Decedent. Def.'s Facts ¶ 25.

After midnight, Plaintiff and the Howes went to the ship's nightclub as Decedent stayed behind to finish his cigarette. *Id.* ¶ 30. Decedent never arrived at the nightclub, however. *See id.* ¶¶ 30 – 36. Instead, he entered his cabin alone at 12:28 a.m., and ultimately stepped out onto the cabin balcony. *Id.* ¶ 37 – 38. Around 1:00 a.m., Decedent fell off the balcony onto the lower deck, resulting in his death. Def.'s Facts ¶ 41; Pl.'s Facts ¶ 64. Parties dispute Decedent's blood alcohol content at the time of his death, and Plaintiff's and the Howes' level of concern for Decedent's well-being before his fall.

Carnival's alcohol servers and bartenders are required to undergo alcohol service training. Pl.'s Facts ¶ 42. The training dictates that their employees (1) never serve an obviously intoxicated guest, (2) offer water to guests who have had multiple drinks, (3) contact their manager when an employee is unsure of what to do, and (4) use a so-called "Traffic Light System" to gauge a guest's potential intoxication level. *Id.* ¶¶ 45, 53. To that end, employees are trained to observe guests' behaviors and actions in order to assess their intoxication levels. *See id.* ¶¶ 45 – 51. Bartenders and servers must stop serving guests alcohol if they sway, stagger, or slur their speech. *Id.* ¶ 57. In those types of situations, an employee is trained to inform the guest that the employee will not serve the guest alcohol, provide the guest a glass of water, inform the employee's manager and security of the matter, and keep

the guest in place before security may arrive. *Id.* ¶ 58. In cases of extreme intoxication, the Chief Security Officer may lead the guest to their cabin, and possibly surveil the guest for at least an hour thereafter as well. *Id.* ¶ 63.

## II.   LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56. In making this assessment, a court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 – 48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### III.   DISCUSSION

General maritime law dictates that a shipowner owes its passengers a duty of reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959). "[A] cause of action for over service of alcohol sounds in negligence." *Doe v. NCL (Bahamas) Ltd.*, No. 11-22230-CIV, 2012 WL 5512347, at *6 (S.D. Fla. Nov. 14, 2012). The passenger has the burden to prove that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). "[A]s a prerequisite to imposing liability, . . . the carrier [must] have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). For over service of alcohol cases, the facts must show "that a reasonable defendant would have been on notice of the impending danger to the plaintiff. . . . Accordingly, the intoxicated passenger's behavior is relevant to the determination that Defendant . . . was on notice of the danger." *Doe*, 2012 WL 5512347, at *6 (internal quotation marks omitted). "Mere notice that a passenger is intoxicated, however, may not always be sufficient to put a defendant on notice that the passenger is in serious danger." *Doe v. NCL (Bahamas) Ltd.*, No. 11-22230-CIV, 2012 WL 5512314, at *3 (S.D. Fla. Nov. 14, 2012).

Here, the parties clamor over whether Carnival had sufficient notice of Decedent's intoxication. For Plaintiff's part, she and the Howes attest to Decedent's visible signs of intoxication in portions of their depositions. In addition, Carnival's training for servers and bartenders requires them to observe behavioral signs of intoxication, which, Plaintiff argues, should have alerted employees to Decedent's condition. In particular, Decedent's fall from

his barstool could have alerted the bartender to execute Carnival's protocol for heavily intoxicated guests. On the other hand, as Carnival contends, Plaintiff may have been better situated to appreciate Decedent's condition, given that they spent the entire trip together and Plaintiff was aware of Decedent's drinking habits. Her buying another round of drinks after Decedent fell from his barstool, or leaving Decedent alone at the end of the night, may illustrate how little Plaintiff perceived Decedent's drinking as a danger. What is more, Plaintiff ordered and signed off on most rounds of drinks throughout the day for both herself and Decedent, possibly impeding Carnival employees from observing Decedent more closely before his death. Taken together, the notice issue is a fact-intensive inquiry that a jury should resolve.

Carnival alternatively argues that its duty of reasonable care was discharged once Decedent returned to his cabin, and that imputing liability for his death based on any alleged over service of alcohol is unreasonable. To support its position, Carnival cites to cases and laws that limit liability for alcohol purveyors in non-maritime settings. *See* ECF Nos. 41 at 12 – 13 (citing two state law cases where alcohol purveyors were not liable for decedents' deaths), 79 at 6 – 7 (citing to dram shop liability laws). These cases and laws are of little utility in a general maritime law case like this one. For one, general principles of negligence in maritime cases preempt state laws governing alcohol purveyors, such as dram shop liability laws. *See Doe*, 2012 WL 5512347, at *5. Further, even accepting Carnival could have discharged its duty in this situation, it is unclear whether it did so. In fact, it is possible Carnival violated its policies for handling highly intoxicated individuals when it did not monitor Decedent after his last drink and when he exited to his cabin alone. Without more undisputed evidence over Carnival's actions in response to Decedent's intoxication, issues over dischargeability and foreseeability are best reserved for the jury.

## IV.   CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that Carnival's Motion for Summary Judgment ("Motion") is **DENIED**.

      **DONE and ORDERED** in chambers, at Miami, Florida, this 13th day of January

2017.

_____

MARCIA G. COOKE
United States District Judge


Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*